IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEVEN D. LUKENS,**<br>71 WEST 109th STREET, APT. 5B<br>NEW YORK, NEW YORK 10025<br><br>**Plaintiff,**<br><br>v.<br><br>**CONDOLEEZZA RICE, in her official capacity as United States Secretary of State,**<br>UNITED STATES DEPARTMENT OF STATE<br>2201 C STREET, N.W.<br>WASHINGTON, D.C. 20520<br><br>**Defendant.** | Civil Action No. 08-cv-00243-RMC |

**FIRST AMENDED COMPLAINT**

Steven D. Lukens, by his attorneys Ropes & Gray LLP, as and for his complaint herein, alleges as follows:

**Preliminary Statement**

1. This is an action brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, *et seq.*, to remedy unlawful discrimination by a federal government agency on the basis of disability.

2. This action is the direct result of the United States Department of State's (hereinafter the "Department") refusal to hire Mr. Lukens, a qualified candidate otherwise approved by the Department, who lives with the human immunodeficiency virus (hereinafter "HIV"), as a Foreign Service Officer (hereinafter "FSO").

3.  Mr. Lukens seeks declaratory relief, compensatory damages, attorneys' fees and costs, and any other relief the court deems just and proper.

## Parties

4.  Steven D. Lukens is a citizen of the United States and resides in New York, New York.

5.  Defendant Condoleezza Rice is the Secretary of State of the United States, head of a federal department in this judicial district that is subject to the Rehabilitation Act. The United States Foreign Service is an agency of the State Department and is therefore prohibited by the Rehabilitation Act from discriminating against otherwise qualified people with disabilities in the terms or conditions of employment.

## Jurisdiction

6.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4), and under the provisions of 29 U.S.C. § 794a and 42 U.S.C. § 2000e-5(f).  This action is authorized by 29 U.S.C. §§ 791 and 794a; and 29 C.F.R. § 1614.407.  Damages and a trial by jury are provided for by at least 42 U.S.C. § 1981a.  This court has jurisdiction to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

7.  Venue is proper under 28 U.S.C. § 1391(e), because Defendant Condoleezza Rice, in her official capacity, resides in this judicial district and a substantial part of the events or omissions giving rise to this complaint occurred in this judicial district.

## Background

8.  Mr. Lukens first tested positive for HIV in 1992.

9. Mr. Lukens manages HIV with antiretroviral medications and periodic examinations by physicians.

10. Mr. Lukens makes periodic visits to his physician for monitoring purposes, and he receives his medications by mail in 30-day or 90-day supplies.

11. Mr. Lukens has never suffered an opportunistic infection or been hospitalized because of his HIV-positive status.

12. Mr. Lukens is in good health.

13. During the years since learning of his HIV-positive status, Mr. Lukens has maintained a demanding career that has often required him to travel for extended periods, often several months, away from his regular physician.

14. After receiving the immunizations and prophylactic treatments that were recommended for his destinations, including "live" vaccines, Mr. Lukens has traveled without medical incident to at least Argentina, Cambodia, Mexico, and Peru as well as several European countries.

15. As a result of his HIV infection and the corresponding limitations on many of his major life activities, he is a person with a disability within the meaning of the Rehabilitation Act.

**Facts**

16. Mr. Lukens formally applied to become a Foreign Service Officer by sitting for the written exam on April 23, 2005.

17. Mr. Lukens sought a position as a Junior Officer in the Management Affairs career track of the Foreign Service.

18. On information and belief, a Foreign Service Management Officer's duties include performance of the following functions, by way of illustration and without limitation: developing personnel; negotiating bilateral work agreements; establishing or implementing reciprocal tax treatment; managing a real estate portfolio; managing financial assets; coordinating with other U.S. agencies to share administrative costs, and providing supervision at U.S. embassies, consulates and other diplomatic posts.

19. Mr. Lukens was notified in July 2005 that he passed the written examination administered on April 23, 2005, and advanced to the oral assessment stage.

20. Mr. Lukens participated in the day-long series of tests constituting the oral assessment on December 13, 2005, and he was notified the same day that he had passed.

21. As a result of his passing score, on or about December 13, 2005, Mr. Lukens was made a conditional offer to join the Foreign Service.

22. The Department conditioned Mr. Lukens's offer of employment on his ability to obtain a medical clearance.

23. On information and belief, had the necessary clearances been granted, the score received by Mr. Lukens on the oral assessment would have guaranteed his eventual placement as a junior Foreign Service Officer.

24. On or about January 13, 2006, Mr. Lukens presented for his medical examination.

25. Mr. Lukens informed the medical personnel of the Department during that January 13, 2006, medical examination that he was taking antiretroviral medications.

26. Mr. Lukens confirmed his HIV-positive status in a face-to-face conversation with Department physician Dr. Terese Thomas on or about January 18, 2006.

4

27. Dr. Thomas informed Mr. Lukens that his HIV-positive status would likely result in denial of the requisite Class 1 medical clearance.

28. After Mr. Lukens had submitted a summary letter from his physician describing the results of certain lab tests, Mr. Lukens received a personal phone call from Dr. Thomas, who informed him that he would be denied Class 1 medical clearance.

29. During the phone call identified in paragraph 28, Dr. Thomas communicated to Mr. Lukens that the reason why the Department denied Class 1 clearance to Mr. Lukens was because the lab results from his HIV-related blood tests might not always be good, or used words to that effect.

30. On or about February 22, 2006, Mr. Lukens received a letter from Laurence G. Brown, M.D., Medical Director of the Office of Medical Services, stating that Mr. Lukens was assigned a Class 5 medical clearance — effectively a denial of medical clearance to serve as an FSO — and that he could request a waiver, but that such waivers "are rarely granted."

31. The letter described in paragraph 30 did not contain a single reference to Mr. Lukens's HIV status, nor did it identify why the Department denied him Class 1 clearance.

32. Two days later, on February 24, 2006, Mr. Lukens was notified of his denial of Class 1 medical clearance by a letter from Ms. Patricia Evans, Personnel Staffing Specialist, Board of Examiners for the Foreign Service. This letter also informed Mr. Lukens of his right to request a waiver.

33. The letter from Ms. Evans, described in paragraph 32, also failed to give even one concrete reason why Mr. Lukens was denied Class 1 clearance.

34. On information and belief, the Department denied Mr. Lukens's medical clearance solely due to his HIV-positive status.

35. On March 22, 2006, Mr. Lukens timely requested a waiver by letter to Ambassador W. Robert Pearson, Director General of the Foreign Service.

36. Mr. Lukens specifically requested "a reasonable accommodation" : "I believe I could work under a Class I clearance, as long as I could travel to obtain regular lab work. If that is not feasible, a Class II clearance would certainly make sense in my case."

37. On or about April 25, 2006, the Department refused Mr. Lukens's request for a waiver.

38. On information and belief, the Department will retain, and grant Class 2 medical clearances to, FSOs who test positive for HIV during their employment.

39. The Department refused to grant a Class 2 medical clearance to Mr. Lukens.

40. On information and belief, the Department allows current FSOs who are assigned a Class 2 or Class 5 medical clearance to appeal that classification to a panel of three physicians.

41. Mr. Lukens was not given the opportunity to appeal his medical classification to a panel of three physicians.

42. On information and belief, the Department denies Class 1 medical clearance to all HIV-positive FSO candidates.

43. On information and belief, the Department has a policy of denying Class 1 medical clearance to any HIV-positive FSO candidate.

44. On information and belief, the Department denies Class 2 medical clearance to all HIV-positive candidates.

45. On information and belief, the Department has a policy of denying Class 2 medical clearance to any HIV-positive candidate.

46. On information and belief, the Department retains at least some Foreign Service Officers who test positive for HIV while employed.

47. On information and belief, the individuals identified in paragraph 46 are granted Class 2 medical clearance and approved for limited overseas duty.

48. The Department is required by Executive Order No. 13164 to establish effective written procedures for processing requests for reasonable accommodations by job applicants with disabilities.

49. On information and belief, the Department does not follow effective written procedures for processing requests for reasonable accommodations by job applicants with disabilities.

50. The Department's discriminatory refusal to hire qualified candidates like Mr. Lukens violates the Rehabilitation Act and the Department's own regulations.

51. The Rehabilitation Act and the Department's own regulations require that candidates be assessed on the basis of their individual qualifications, rather than according to stereotype.

52. By refusing to grant Mr. Lukens the medical clearance or waiver that his good health merits, the Department violated federal law.

53. On June 2, 2006, Mr. Lukens properly and timely commenced the informal Equal Employment Opportunity counseling process. His informal complaint alleged disability discrimination on the basis of his HIV-positive status.

54. The EEO Counselor sent a Notice of Right to File a Discrimination Complaint, dated June 20, 2006, to Mr. Lukens.

55. On July 4, 2006, Mr. Lukens timely filed a formal complaint of discrimination.

56. By a letter dated July 10, 2006 Mr. Lukens was notified that his formal complaint had been accepted.

57. Mr. Lukens received the Department's Report of Investigation on July 13, 2007.

58. Mr. Lukens timely requested a Final Agency Decision on August 9, 2007.

59. The Department issued its Final Agency Decision and notified Mr. Lukens of his right to file a civil action in this matter in a letter dated November 20, 2007.

60. Mr. Lukens has fulfilled all conditions precedent to the institution of this suit.

### COUNT ONE: DISABILITY DISCRIMINATION UNDER SECTION 501 OF THE REHABILITATION ACT

61. Mr. Lukens realleges paragraphs 1-60 as if fully set forth herein.

62. Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, prohibits the federal government from discriminating against otherwise qualified people with disabilities in the terms or conditions of employment, and requires the federal government to take affirmative action to employ people with disabilities who can perform, with or without reasonable accommodation, the essential functions of a particular job. This prohibition and mandate similarly protects people whom the federal government regards as disabled.

63. Due to his HIV-positive status, Mr. Lukens has a physical impairment for the purposes of the Rehabilitation Act that substantially limits one or more of his major life activities, such that he is a person with a disability within the meaning of the Rehabilitation

Act. By way of illustration only, and without limitation, his impairment substantially limits many major life activities, including, for example, reproduction.

64. Additionally, on information and belief, the Department regards Mr. Lukens as having a physical impairment that substantially limits one or more of his major life activities, such that he is a person with a disability within the meaning of the Rehabilitation Act.

65. Furthermore, the Department "limit[ed], segregate[d], or classif[ied]" Mr. Lukens on the basis of his disability in a way that adversely affected his employment opportunities or status, in violation of the Rehabilitation Act.

66. Given his job skills and physical condition, Mr. Lukens is qualified and capable of safely performing all essential functions of a Foreign Service Officer without accommodation. The Department therefore violated Section 501 of the Rehabilitation Act when it denied Mr. Lukens a Class 1 medical clearance or waiver on account of his HIV-positive status.

67. In the alternative, given his job skills and physical condition, Mr. Lukens is qualified and capable of safely performing all essential functions of a Foreign Service Officer, with reasonable accommodation such as, but not limited to, granting Mr. Lukens a Class 2 medical clearance or waiver.

68. Mr. Lukens repeatedly sought a reasonable accommodation.

69. Mr. Lukens's requests for a reasonable accommodation were not properly considered by the Department.

70. The Department violated Section 501 of the Rehabilitation Act when it denied Mr. Lukens such accommodation, classified him, and discriminated against him on the basis of his HIV-positive status.

71. The Department violated Section 501 of the Rehabilitation Act by failing to take affirmative action to hire otherwise qualified candidates with disabilities.

## REQUEST FOR DECLARATORY JUDGMENT

72. Mr. Lukens realleges paragraphs 1-71 as if fully set forth herein.

73. An actual and present controversy exists between Mr. Lukens and the Department relating to their respective legal rights and duties:

(a) Mr. Lukens contends that Defendant Condoleezza Rice and the Department have discriminated against him on the basis of his disability in violation of the Rehabilitation Act of 1973, causing Mr. Lukens to suffer damages, and entitling him to relief from this Court;

(b) On information and belief, Secretary Rice and the Department deny these contentions, and aver that the Department's decisions with respect to Mr. Lukens's medical clearance and reasonable accommodation request as well as its refusal to hire HIV-positive candidates as Foreign Service Officers does not violate federal law, and furthermore, that Mr. Lukens's HIV does not constitute a disability within the meaning of the Rehabilitation Act.

74. A judicial declaration among the parties is necessary and appropriate at this time in order that they promptly may ascertain and enforce their respective rights and obligations.

75. Mr. Lukens is entitled to a declaratory judgment that the department has discriminated against him on the basis of disability; that the Department's refusal to hire HIV-positive applicants as Foreign Service Officers violates the Rehabilitation Act; and that Mr. Lukens has been damaged thereby, entitling him to relief from this Court.

### DEMAND FOR A JURY TRIAL

76. Plaintiff Steven D. Lukens demands a trial by jury on all issues.

### RELIEF REQUESTED

77. Mr. Lukens realleges paragraphs 1-76 of this Complaint as if fully set forth herein.

78. WHEREFORE, Mr. Lukens respectfully requests:

(a) a trial by jury;

(b) that this Court enter a declaratory judgment that the Department has discriminated against him on the basis of disability; that the Department's refusal to hire HIV-positive applicants as Foreign Service Officers violates the Rehabilitation Act; and that Mr. Lukens has been damaged thereby, entitling him to relief from this Court;

(c) that this Court order the Department to grant Mr. Lukens a Class 1 medical clearance or a Class 2 medical clearance or waiver; or to hire Mr. Lukens as a Foreign Service Officer with appropriate reasonable accommodation;

(d) that this Court order the Department to pay Mr. Lukens the value of his lost wages and benefits, as well as compensatory damages as authorized by the Rehabilitation Act;

(e) that this Court order the Department to pay attorneys' fees and costs as authorized by law; and

      (f)    that this Court order any such further relief as it deems just and proper.

Respectfully submitted, this 11th day of June, 2008.

                              ROPES & GRAY LLP

Dated:  June 11, 2008

By:  */s/ James E. Hopenfeld*
James E. Hopenfeld
(D.C. Bar No. 483985)
W. Rudolph A. Kleysteuber (*pro hac vice*)
One Metro Center
700 12th Street, NW
Washington, DC  20005
T:  (202) 508-4600
F:  (202) 508-4650
james.hopenfeld@ropesgray.com
rudy.kleysteuber@ropesgray.com

Stuart W. Yothers (*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036
T:  (212) 596-9000
F:  (212) 596-9090
stuart.yothers@ropesgray.com

Attorneys for Plaintiff,
STEVEN D. LUKENS

## CERTIFICATE OF SERVICE

I hereby certify this 11th day of June 2008 that a copy of the foregoing Plaintiff's First Amended Complaint was served by first class mail and by e-mail to Defendant's counsel of record, Heather R. Phillips, at the address listed below. I further certify that the foregoing complaint and a copy of this certificate will be sent to the Court's generic ECF e-mail address, dcd_cmecf@dcd.uscourts.gov, for docketing in the Court's Electronic File System.

Heather R. Phillips
Trial Attorney
U.S. Department of Justice
Civil Division/Federal Programs
P.O. Box 833
Washington, D.C. 20044
Email: heather.phillips@usdoj.gov

T: (202) 616-0679
F: (202) 616-8470

_/s/ Rudy Kleysteuber_

W. Rudolph A. Kleysteuber IV
(admitted *pro hac vice* in this matter)
One Metro Center
700 12th Street, NW
Washington, DC 20005
T: (202) 508-4600
F: (202) 508-4650
rudy.kleysteuber@ropesgray.com

Attorney for Plaintiff,
STEVEN D. LUKENS